IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TYRONE GABB, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 16-CV-119-NJR-DGW |
| MIKE GEIER and STEPHEN DUNCAN, | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

Now pending before the Court is a Motion for Summary Judgment filed by Defendants Mike Geier[1] and Stephen Duncan (Doc. 30). For the reasons set forth below, the motion is granted.

## FACTUAL BACKGROUND

Plaintiff Tyrone Gabb, an inmate at Lawrence Correctional Center ("Lawrence CC"), brings this civil rights action pursuant to 42 U.S.C. § 1983. Gabb asserts that Defendants subjected him to unsanitary conditions in his cell when his toilet stopped working and Defendants failed to fix it for eleven days (Doc. 33-1, p. 17, Tr. 21:1-4).[2]

---

[1] Gabb identified the plumber in the case as "Mike Guyer." The affidavit signed by this party, however, spells his name as "Geier." The Court will use the spelling as designated by Defendant. Accordingly, the Clerk's Office is **DIRECTED** to update the docket sheet to reflect the correct name of the defendant: "Mike Guyer" should be "Mike Geier."

[2] This case was severed from *Gabb v. Wexford Health Source, Inc., et al.*, No. 15-cv-1415-NJR (original case), pursuant to a Memorandum and Order entered in the original case on February 2, 2016 (*See* Doc. 8 in Case No. 15-cv-1415-NJR; Doc. 1).

Specifically, Gabb claims that the toilet in his cell stopped working on the morning of June 26, 2015 (Doc. 33-1, p. 17, Tr. 21:1-4). Gabb testified at his deposition that he informed gallery Officer Boyer that day, and Officer Boyer responded that he would put in a work order for the plumber (Doc. 33-1, p. 17, Tr. 21:20-23). Subsequently, Gabb notified correctional staff during each shift about the problem (Doc. 33-1, p. 17, Tr. 22:9-23) and was told multiple times that a work order had been submitted (Doc. 33-1, p. 17, Tr. 23:10-16).

It was not until eleven days later that the toilet was fixed by Defendant Geier, the plumber (Doc. 33-1, p. 18, Tr. 27:6-9). Lawrence CC was on lockdown during this time, so Gabb and his cellmate were unable to leave their cell to use a different toilet (Doc. 33-1, p. 15, Tr. 14:22-15:1). Over the eleven days, the toilet filled up with urine and feces (Doc. 33-1, p. 15-16). Nonetheless, Gabb was forced to sleep and eat all of his meals in his cell with the non-working toilet (Doc. 33-1, p. 15-16, Tr. 16:25-17:2).

Geier states in his affidavit that he reviewed the log book and could not find any work order relating to Gabb's toilet until July 6, 2015 (the same day that he fixed the toilet) (Doc. 33-1, p. 24). That work order was written by Geier himself, and Geier explained that he would write up his own work orders when he was contacted verbally correctional staff (Doc. 33-1, p. 24).

Gabb further testified that, on July 1, 2015 (after going six days without a working toilet), he filed an emergency grievance (Doc. 33-1, p. 18, Tr. 25:3-20). The emergency grievance was not returned to Gabb until a week later, on July 8, 2015 (Doc. 33-1, p. 18, Tr. 27:1-5; Doc. 33-1, p. 30). At this point, the toilet was already fixed, so Defendant

Duncan, the warden, marked the grievance "emergency not substantiated" (Doc. 33-1, p. 31). Duncan produced an affidavit from Sharon Pierce, a Casework Supervisor at Lawrence (Doc. 33-1). In the affidavit, Pierce states that emergency grievances are typically forwarded on the same day they are received (Doc. 33-1, p. 29). She further states in her affidavit that Gabb's emergency grievance, dated July 1, 2015, was not logged as received until July 6, 2015 (Doc. 33-1, p. 29). No explanation for the delay is provided.

## DISCUSSION

The standard applied to summary judgment motions under Federal Rule of Civil Procedure 56 is well-settled and has been succinctly stated as follows:

> Summary judgment is appropriate where the admissible evidence shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. A "material fact" is one identified by the substantive law as affecting the outcome of the suit. A "genuine issue" exists with respect to any such material fact . . . when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." On the other hand, where the factual record taken as a whole could *not* lead a rational trier of fact to find for the non-moving party, there is nothing for a jury to do. In determining whether a genuine issue of material fact exists, we view the record in the light most favorable to the nonmoving party.

*Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 681 (7th Cir. 2014) (citations omitted).

Gabb's sole claim in this case is that Geier and Duncan subjected him to unconstitutional conditions of confinement when he was forced to live in a cell with a toilet filled with urine and feces for eleven days. Two elements are required to establish a violation of the Eighth Amendment due to unconstitutional conditions of confinement. First, the prisoner must show the conditions deny the inmate "the minimal civilized

measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). This first prong is objective. *Id.* Second, a plaintiff must establish the defendants had a subjectively culpable state of mind; specifically, that they were deliberately indifferent to a substantial risk of serious harm to the inmate from those conditions. *Id.* at 837, 842.

As to the first objective prong, prison officials have a duty to provide the "basic necessities of civilized life," which include sanitation and utilities. *See Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989); *see also Jackson v. Duckworth*, 955 F.2d 21, 22 (1989) (objective prong may be met by evidence of inadequate plumbing, vermin, smell of human waste, inadequate heating/light, lack of clean water, and other issues); *see also Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (objective prong may be met with evidence of six days confinement in a cell with feces smeared on walls, water of floor, and the deprivation of cleaning supplies and mattress/bedding).

Here, Gabb testified he was locked in his cell for eleven days without a working toilet (Doc. 33-1, 16:25-17:2). Because the prison was on lockdown, Gabb was unable to leave to use another toilet and thus had to live and eat in his cell for eleven days with a toilet filled with urine and feces (Doc. 33-1, 14:22-15:1; 16:25-17:2). Defendants do not contest these facts (Doc. 31, p. 5). Because a jury could certainly find that Gabb was denied the basic human need for sanitation, the first element is met.

The second prong requires Gabb to show that Defendants were deliberately indifferent to his needs—in other words, that they "knew about it and could have prevented it but did not." *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009). Prison

officials' failure to take adequate steps to prevent inmates' exposure to human waste can amount to deliberate indifference. *See Jackson*, 955 F.2d at 22. Defendants argue, however, that they did not know about the problem with Gabb's toilet and therefore could not have been deliberately indifferent (Doc. 30, p. 2).

Regarding Defendant Geier, there is insufficient evidence upon which a jury could find he knew of the plumbing problem with Gabb's toilet. It is undisputed there is no written work order for fixing the toilet prior to July 6, 2015 (Doc. 33-1, p. 24). While it is also undisputed that guards would sometimes place verbal work orders, Geier's sworn statement indicates it was his practice to document such verbal requests by writing up a work order himself (Doc. 33-1, p. 24). Further, Gabb admitted in his deposition that he had no knowledge as to when Geier became aware of the problem (Doc. 33-1, p. 19, Tr. 30:4-10). Based on the evidence before the Court, the only conclusion a jury could reach is that Geier received a verbal work order to fix Gabb's toilet on July 6, 2015 and fixed it the same day. Thus, there is no evidence upon which a jury could find Geier was deliberately indifferent to Gabb's needs regarding the toilet.

Similarly, there is insufficient evidence upon which a jury could conclude that Duncan knew of the plumbing problem with Gabb's toilet. Although the emergency grievance submitted by Gabb was dated July 1, 2015, Pierce states in her affidavit that the Clinical Services Office logs the date that the emergency grievance is received and then forwards the grievance to the Warden's Office for review (Doc. 33-1, p. 29). She also explains that emergency grievances are not processed or logged over the weekend or during holidays because Clinical Staff are not at Lawrence CC on those days (*Id.*). Lastly,

she explains that she reviewed the Lawrence 2015 Emergency Grievance Log and it indicated that an emergency grievance from Gabb was received on July 6, 2015 and sent to the Warden's Office on July 7, 2015 (Doc. 33-1, p. 30). Duncan found that the emergency was not substantiated because, at that point, the toilet had already been fixed (*Id.*). Although there was an unexplained five day delay from the time the emergency grievance was submitted to the time that it was logged, this fact, by itself, does not indicate that Duncan had any knowledge of the problem. Additionally, the five day period included a holiday weekend, when Clinical Staff are off work. Thus, there is no evidence in the record upon which a jury could find that Duncan had knowledge of the problem with the toilet and was deliberately indifferent to Gabb's needs.

## CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment (Doc. 30) is **GRANTED**. This action is **DISMISSED with prejudice**. Judgment will be entered accordingly.

Gabb is **ADVISED** that if he wishes to contest this Order, he has two options. He can ask the Seventh Circuit to review the Order, or he can first ask the undersigned to reconsider the Order before appealing to the Seventh Circuit.

If Gabb chooses to go straight to the Seventh Circuit, he must file a notice of appeal *within 30 days* from the entry of judgment or order appealed from. FED. R. APP. P. 4(a)(1)(A). The deadline can be extended for a short time only if Gabb files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. FED. R. APP. P. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421,

424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

On the other hand, if Gabb wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within twenty-eight (28) days of the entry of judgment, and the deadline *cannot* be extended. FED. R. CIV. P. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be stopped. FED. R. APP. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. FED. R. APP. P. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor,* 556 F.2d 818, 819–

20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Gabb showing excusable neglect or good cause.

If Gabb chooses to appeal to the Seventh Circuit, he can do so by filing a notice of appeal in this Court. FED. R. APP. P. 3(a). The current cost of filing an appeal with the Seventh Circuit is $505.00. The filing fee is due at the time the notice of appeal is filed. FED. R. APP. P. 3(e). If Gabb cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* FED. R. APP. P. 24(a)(1)(C). The IFP motion must set forth the issues Gabb plans to present on appeal. *See* FED. R. APP. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

**IT IS SO ORDERED.**

**DATED:   March 29, 2018**

_____
**NANCY J. ROSENSTENGEL**
**United States District Judge**